UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHENZHEN XINGCHEN XUANYUAN
INDUSTRIAL CO. LTD.,

                              Plaintiff,

                 -against-

AMAZON.COM SERVICES, LLC, *and*
AMAZON.COM, INC.,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. 1:23-cv-6549-GHW

**PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION
TO STAY CASE
AND COMPEL PLAINTIFF
BACK TO ARBITRATION**

### <u>ORAL ARGUMENT REQUESTED</u>

JS LAW OFFICE
Julie Guo
200 East 36th Street
New York, NY 10016
Julie.guo@jslawglobe.com
(917) 773-1868
*Attorney for Plaintiff*

AIDALA, BERTUNA & KAMINS, P.C.
David M Schwartz
546 5th Avenue 6th Fl
New York, NY 10017
david@davidschwartzesq.com
(212) 641-0499
*Attorney for Plaintiff*

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................ 6

II.  STATEMENT OF FACTS AND BACKGROUND ......................................................... 6

III. OPPOSITION TO MOTION............................................................................... 10

   A.   Section **18.7** -the Expedited Procedure Restriction Term Is Unenforceable Because It Would

   Prevent the Plaintiff from Effectively Vindicating Its Statutory Rights Under the Green Tree and

   Armendariz Standards. ...................................................................................10

   B.   Section **18.7** Is Unenforceable Because It is ***Unconscionable***........................................20

   C.   Section **18.10**-the Class Action Waiver Term Is Unenforceable Because It Would Prevent the

   Plaintiff from Effectively Vindicating Its Statutory Rights And/Or It Is Unconscionable. ......23

   D.   Defendants' Motion to Compel Plaintiff Should Be Denied Because Amazon's Breaches and

   Unenforceable Terms Caused the Dismissal of Plaintiff's Arbitration. ...................................24

   E.   Alternatively, Even If this Court Decides to Compel Plaintiff Back to Arbitration, Plaintiff

   Should Be Entitled to Arbitration Its Claims in A **Non**-Prohibitively Expensive Way. ...........27

IV.  CONCLUSION ................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                    Page(s)

*Adler v. Fred Lin Manor,*
   153 Wash.2d 331, 344–45, 103 P.3d 773 (Wash. 2004)……………………….………...22, 23

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
   24 Cal.4th 83 (2000)………………………………………………………...…… passim

*AT&T Mobility II, LLC v. Pestano,*
   2008 WL 682523, at *6 (N.D. Cal. Mar. 7, 2008)…………………………….…………..18

*Burnett v. Pagliacci Pizza, Inc.,*
   196 Wash. 2d 38, ¶ 27, 470 P.3d 486 (2020)……………………………….……....21, 23

*Chavarria v. Ralphs Grocery Co.,*
   733 F.3d 916, 920 (9th Cir. 2013)………………………………...……………………29

*Circuit City Stores v. Adams,*
   279 F.3d 889, 893-94  (9th Cir. 2002)………………………………………………………19

*D.C. v. Harvard-Westlake School,*
   176 Cal.App.4th 836, 861 (2009)………………………………………………...……18

*Doctor's Assocs., Inc. v. Casarotto,*
   517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)………………………………..21

*Gandee v. LDL Freedom Enters., Inc.,*
   176 Wash.2d 598, 293 P.3d 1197 (Wash. 2013)…………………………………………22, 23

*Gilmer v. Interstate/Johnson Lane Corp.,*
   500 U.S. 20, 28 (1991)………………………………………………………...…….14

*Goodridge v. KDF Automotive Group, Inc.,*
   2012 WL 3635279 (Cal. App. 4th Dist. 2012)………………………………….…….28

*Green Tree Fin. Corp. v. Randolph,*
   531 U.S. 79, 90 (2000)……………………………………………………...……… passim

*Haberman v. Wash. Pub. Power Supply Sys.,*
   109 Wash.2d 107, 169, 744 P.2d 1032, 750 P.2d 254 (1987)…………………..………...11

*Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company,*
   105 Wash.2d 778, 784-851 (1986)…………………………………………………...12, 13, 14

*Hoober v. Movement Mortg., LLC,*
   382 F. Supp. 3d 1148, 1153 (W.D. Wash. 2019)…………………………………………29

*In re American Express Merchants' Litigation*,
    554 F.3d 300 (2nd Cir. 2009)……………………………………………………..………17

*In re American Express Merchants' Litigation*,
    634 F.3d 187 (2d Cir. 2011)………………………………………………..……………15

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003)…………………………………………...……..17, 19

*Klem v. Washington Mutual Bank*,
    178 Wash.2d 771, 787 (2013)………………………………………………………………12

*Mendez v. Palm Harbor Homes, Inc.*,
    111 Wash.App.446, 465 (2002)……………………………………………………..……15

*Mercuro v. Superior Court*,
    96 Cal.App.4th 167, 180 (2002)…………………………………………………..………18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614, 637 (1985)…………………………………………………………...14

*Nelson v. McGoldrick*,
    127 Wash.2d 124, 131, 896 P.2d 1258 (1995)……………………………...……..22

*Panag v. Farmers Insurance of Washington*,
    166 Wash.2d 27, 37 (2009)………………………………………………………………11

*Perez v. Globe Airport Sec. Servs., Inc.*,
    253 F.3d 1280, 1283 (11th Cir. 2001)……………………………………………………29

*Ragone v. Atlantic Video at Manhattan Ctr.*,
    595 F.3d 115, 121 (2d Cir.2010)…………………………………………………………21

*Schroeder v. Fageol Motors, Inc.*,
    86 Wash.2d 256, 260, 544 P.2d 20 (1975)…………………………………………...21, 22

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220, 238 (1987)………………………………………………………………...14

*Short v. Demopolis*,
    103 Wash.2d 52, 61, 691 P.2d 163 (1984)………………………………………………11

*Sutherland v. Ernst & Young LLP*,
    768 F.Supp.2d 547, 551 (S.D.N.Y. 2011)………………………………………………...15

*Ting v. AT&T*,
    319 F.3d 1126, 1151 (9th Cir. 2003)……………………………………………………...18

*Valle v. ATM Nat., LLC,*
  No. 14-CV-7993 KBF, 2015 WL 413449, at *2 (S.D.N.Y. Jan. 30, 2015)……………………21

*Zuver v. Airtouch Comm'n, Inc.*,
  103 P.3d 753 (Wash. 2004)……………………………………………….………………..21, 29

STATUTES

9 U.S.C.A. § 2. …………………………………………………………............20, 28

RCW 19.86.010…………………………………………………………...………...12

RCW 19.86.020…………………………………………………………...............10

RCW 19.86.090…………………………………………………………...…11, 14

RCW 19.86.920…………………………………………………………...…….10, 11

# I.      PRELIMINARY STATEMENT

Plaintiff SHENZHEN XINGCHEN XUANYUAN INDUSTRIAL CO. LTD ("Plaintiff") respectfully submit this opposition memorandum of law in support of Plaintiff's opposition to Defendants Amazon' motion to compel the Plaintiff back to arbitration, which also serve as Plaintiff's counter motion to request this Court to void Section 18.7 and 18.10 of the Amazon Services Business Solutions Agreement (the "BSA," Exhibit P-M1).

Petitioners respectfully request that this Court should deny Defendant's motion to compel Plaintiff back to arbitration and rule Section 18.7 and 18.10 of the BSA unenforceable. **First**, Sections 18.7 and 18.10 are unenforceable because they would prevent the plaintiff from effectively vindicating its statutory rights and common law claims per Washington CPA laws Under the Green Tree and Armendariz Standards.

**Second**, Sections 18.7 and 18.10 are unenforceable because they are unconscionable as a matter of law, and the circumstances herein demonstrate unconscionability, both procedural and substantive.  Any ambiguity on this issue requires an evidentiary hearing, not a dismissal of the action.

**Third**, the Defendants' motion to compel Plaintiff back to arbitration should be denied because Amazon's breaches and unenforceable terms caused the dismissal of Plaintiff's arbitration.

**Last**, alternatively, even if this Court decides to compel the Plaintiff back to arbitration, the Plaintiff is entitled to arbitrate its claims in a non-prohibitively expensive way.

For all of the foregoing reasons, the Court should find that Sections 18.7 and 18.10 are unenforceable and Defendants' motion to compel arbitration must be denied.

# II.      STATEMENT OF FACTS AND BACKGROUND

1. According to the *Majority Staff Report and Recommendations, House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary,* Amazon is the dominant online

marketplace.  It reportedly controls about 65% to 70% of all U.S. online marketplace sales.[1] Amazon is the most-visited website in the world for e-commerce and shopping.[2] Amazon has monopoly power over most third-party sellers and many of its suppliers.[3] Sellers feel forced to be on Amazon because that is where the buyers are.[4] (Exhibit P-M2). ***With such kind of e-commerce dominance, small retailers do not have any viable or meaningful choice other than accepting Amazon's terms*** if they want to get their products in front of online consumers.[5]

2.   Sales on Amazon fall into one of two categories: (1) first-party sales, which refer to the sales of Amazon's own private-label products or wholesale products sourced by Amazon ("Amazon's Owned Sales"), and (2) third-party sales, which refer to sales by independent merchants who sell their own products through the Amazon Platform ("third-party sellers"). Therefore, ***competition is present between Amazon-owned sales and third-party sales***.  In its internal documents, Amazon refers to third-party sellers as "internal competitors."[6]

3.   On September 26, 2023, the US government and 17 states sued Amazon in a landmark monopoly case reflecting years of allegations that the e-commerce giant abused its economic dominance and harmed fair competition.  The 172-page complaint alleges that Amazon unfairly promotes its own platform and services at the expense of third-party sellers who rely on the company's e-commerce marketplace for distribution (Exhibit P-M3).[7]

---

[1] See Page 225 of Majority Staff Report and Recommendations, House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary ("House Report", Exhibit P-A2),
[2] *Id.* at 256.
[3] *Id.*
[4] *Id.*
[5] Marcia Savage, *Amazon's e-commerce dominance: Is the price too high?* The Future of Commerce (January 28, 2022), available at https://www.the-future-of-commerce.com/2022/01/28/amazons-e-commerce-dominance-is-the-price-too-high.
[6] See Page 268 of House Report, *Id*
[7] Brian Fung, "*US government and 17 states sue Amazon in landmark monopoly case*" (September 28, 2023), available at https://www.cnn.com/2023/09/26/tech/ftc-sues-amazon-antitrust-monopoly-case/index.html (Exhibit P-A1.2)

4.   Amazon will argue that FTC's monopoly suits against Amazon and all of the facts uncovered by the House Subcommittee in its report are irrelevant to the case at hand.  That position is **not** well taken because a crucial issue for this court to decide in this case is whether Sections 18.7 and 18.10 of the BSA is unconscionable, which requires determining whether or not Plaintiff had any viable or meaningful choice but to enter into the BSA to be successful in selling its products online. As the FTC alleges in the complaint, because of Amazon's dominance in e-commerce, sellers have **little option but to accept** Amazon's terms, resulting in higher prices for consumers and a worse consumer experience.[8]

5.   Amazon relies on automated mechanisms and error-prone fraud detection software to identify and punish third-party sellers Amazon suspects of violating Amazon Services Business Solution Agreement and incorporated policies.[9] ***Algorithmic errors can and do lead to abrupt account deactivation and removal of product listings, which can be financially devastating for third-party sellers.***[10]  Without presenting any evidence to sellers to support its allegations of term violations, Amazon blocked ***over 55,000 seller accounts*** in 2021**,** seizing ***all*** the sales proceeds**.**[11]  The Plaintiff is one of them.

6.   Before an independent merchant can open a third-party seller account (the "Account") on the Amazon Platform, all third-party sellers ***must*** fully accept the terms and conditions set forth in Amazon Services Business Solution Agreement (the "BSA"), having no negotiation power regarding the fairness and enforceability of the contract terms.

7.   Amazon's BSA, an adhesion contract, contains the below:

---

[8] Brian Fung, "US government and 17 states sue Amazon in landmark monopoly case" (September 28, 2023), available at https://www.cnn.com/2023/09/26/tech/ftc-sues-amazon-antitrust-monopoly-case/index.html

[9] Katherine Anne Long, "Amazon abruptly banned Washington state treat-maker Chukar Cherries. Months of appeals went unheeded," *The Seattle Times* (Sept. 27, 2021), available at https://www.seattletimes.com/business/amazon/amazon-abruptly-banned-washington-state-treat-maker-chukar-cherries-months-of-appeals-went-unheeded.(Ex. P-M4)

[10] *Id.; See also* House Report at 270, n. 1670 ("Among the most egregious examples of Amazon's arbitrary treatment of sellers are its abrupt suspensions of their Account, frequently made without explanation. Once Amazon suspends a third-party seller's Account or delists its products, its business is left with largely ineffective remedies as it watches its sales disappear."); *Id.* at 271 ("Because of the severe financial repercussions associated with suspension or delisting, many Amazons' third-party sellers live in fear of the company.").

[11] Long, *supra, footnote 9.*

- Section 3, entitling Amazon to deactivate *any* seller account at *any* time *at will*;

- Section 8, exonerating Amazon from any liability related to the BSA; and

- Section 2, entitling Amazon to *seize any sales proceeds* in the account, whenever Amazon solely determines that the seller has violated the BSA terms.

- Section 18, Mandatory Arbitration *and class action waiver Clause* ("Arbitration Agreement") forcing sellers to go through expensive arbitration proceedings for any dispute on an individual case basis, which includes some terms to force sellers to conduct arbitration in a prohibitively expensive way, including:

  - "*The expedited procedures of the AAA's rules will apply only in cases seeking exclusively monetary relief under $50,000*" ("Section 18.7" " Expedited Procedure Restriction Term")

Under American Arbitration Association ("AAA")  Commercial Rules, the expedited procedures of the AAA's rules will apply to cases with a claim amount below $*100,000*.

  - "*Amazon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action*." ("Section 18.10" or "Class Action Waiver Term")

Per AAA rules and AAA Supplementary Rules for Class Arbitrations, Claimants can conduct arbitration in a class or consolidated action. The AAA administers class arbitrations for cases where the underlying agreement specifies that disputes arising out of the parties' agreement should be resolved by arbitration, and the agreement is silent with respect to class claims, consolidation, or joinder of claims.[12]

8.  In this case, Plaintiff adhered to the BSA when registering its seller account on amazon.com. Plaintiff's seller account was deactivated and sales proceeds in the seller account was seized in June

---

12 American Arbitration Association website, Class

Arbitrationshttps://www.adr.org/ClassArbitration

2021. Plaintiff filed an arbitration demand against Amazon with AAA in January 2021. The case was administered under AAA regular procedure because Amazon's Section 18.7 Expedited Procedure Restriction Term excluded the Plaintiff from AAA Expedited Procedure. In the scheduling conference, Amazon breached Section 18.9 Written Submission Term, requesting evidentiary hearing and resulting in the Plaintiff's arbitration costs doubling, which caused the Plaintiff's arbitration fee payment default and the dismissal of Plaintiff's arbitration in June 2022.

### III.   OPPOSITION TO MOTION

**A. Section 18.7-the Expedited Procedure Restriction Term Is Unenforceable Because It Would Prevent the Plaintiff from Effectively Vindicating Its Statutory Rights Under the Green Tree and Armendariz Standards.**

**a.      The Plaintiff Has Statutory Rights and Common Law Claims under Washington's Consumer Protection Act (the "CPA").**

**1. Washington's CPA applies to consumers and merchants who are injured in his or her business or property" by a violation of the CPA.**

Washington's Consumer Protection Act ("CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."[13]  The purpose of the CPA is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive and fraudulent acts and practices in order to protect the public and foster fair and honest competition."[14]  The CPA is to be "liberally construed that its beneficial purposes may be served."[15] *Haberman v. Wash. Pub. Power Supply Sys.,* 109 Wash.2d 107, 169, 744

---

[13] RCW 19.86.020.

[14] RCW 19.86.920; *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash.2d 107, 169, 744 P.2d 1032, 750 P.2d 254 (1987).
[15] RCW 19.86.920; *Short v. Demopolis*, 103 Wash.2d 52, 61, 691 P.2d 163 (1984).

P.2d 1032, 750 P.2d 254 (1987).  The CPA states that "[a]ny person who is injured in his or her business or property" by a violation of the act may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages.[16] Unlike the consumer protection statutes of many other states, Washington's CPA applies to consumers and ***merchants***.[17] *Panag v. Farmers Insurance of Washington*, 166 Wash.2d 27, 37 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company*, 105 Wash.2d 778, 784-851 (1986))

To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.[18]

## 2. The facts of this case satisfy each element of a CPA claim; therefore, the Plaintiff has statutory rights under the CPA.

### (1) Element 1 – Unfair or deceptive act or practice (or unfair methods of competition)

A claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest. *Klem v. Washington Mutual Bank*, 178 Wash.2d 771, 787 (2013).

Sections 2 and 3 of the BSA allow Amazon the unfettered discretion to not only terminate third-party sellers without warning but also seize sellers' property and retain all of it, which is an unfair trade practice.  Multiple arbitrators already ruled in the cases of Amazon sellers against Amazon that Section 2 of the BSA is an invalid liquidated damage clause and an unenforceable penalty clause because "any

---

[16] RCW 19.86.090.
[17] *Panag*, 166 Wash.2d at 39 ("We will not adopt a sixth element, requiring proof of a consumer transaction between the parties, under the guise of a separate standing inquiry.").
[18] *Panag v. Farmers Insurance of Washington*, 166 Wash.2d 27, 37 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company*, 105 Wash.2d 778, 784-851 (1986)).

payment" in Section 2 cannot meet the "reasonable forecast" test to be a valid liquidated damage clause. Also, the Plaintiff is entitled to the reimbursement of litigation costs under Washington's CPA, a statutory scheme that provides a fairer reimbursement of litigation costs than the BSA.

Amazon's practice of seizing funds causes injury to millions of third-party sellers on Amazon.com and eventually to billions of customers coming to Amazon.com because Amazon's BSA terms and unfair practice of seizing and converting the third-party's funds-their own property would drive millions of small third-party sellers to leave Amazon.com and/or out of business,  which would prevent customers from obtaining sufficient product choices from millions of third-party sellers at a good quality and low price.

### (2)  Element 2 – In trade or commerce

"The Legislature has broadly defined the terms 'trade' and 'commerce' to include 'the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington.'" RCW 19.86.010(2); *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company*, 105 Wash.2d 778, 785 (1986). Here, the entire purpose of the Amazon and third-party seller agency relationship is to help facilitate trade or commerce. Thus, the conduct at issue unquestionably occurs in trade or commerce.

### (3) Element 3 –Public interest.

Whether the conduct is alleged to be unfair or fraudulent, it must somehow affect the public interest. In the case of a private transaction,  a "public interest" may be shown by *applying four factors that indicate a public interest*, which is set in the court of *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Company*, 105 Wash.2d 778, 790-91 (1986).

Applying these factors, it can be determined that the public interest was implicated by Amazon's misconduct: (1) The conduct occurred as part of Amazon's business; indeed, Amazon

seizes seller funds and impounds seller property as a matter of company policy.  *See* Amazon

Funds Withholding Policy; (2) Amazon publicly offers its facilitation services on its website and

undoubtedly has advertised (and continues to advertise) its services to the public. As a result,

Amazon has attracted millions of third-party sellers to its platform; (3) Amazon has been

"soliciting" potential sellers since the first day it started its online retail platform until now; it

spams potential and existing sellers with various offers and deals; and (4) There is no question

that most sellers are in an unequal bargaining position with Amazon (a multi-billion-dollar

company with the largest online sales platform in the world).

### (4) Element 4 – Plaintiff must be injured in their" business or property."

The plaintiff must demonstrate an injury to their business or property to recover on a CPA claim.

See RCW 19.86.090.  "The injury involved need not be great, but it must be established." *Hangman*

*Ridge*, 105 Wash.2d at 792.  The injury requirement is not limited to monetary damages.

Third-party seller funds are blatantly seized by Amazon, which shows direct injury.  They also

sustained substantial injury from the improper account deactivation that removed their selling capacities

on Amazon.com, the largest online retail platform.

### (5) Element 5 – Causation

A causal link is required between the unfair or deceptive acts and the injury suffered by the

Plaintiff. *Hangman Ridge*, 105 Wash.2d at 791-92. This element should present no problems. The third-

party sellers' money, sales revenue, and online store business value were lost solely as a result of Amazon

impounding the seller's funds and property and then refusing to return the same to their rightful owner.

### b.    Section 18.7 Is Unenforceable Because It Would Prevent the Plaintiff from Effectively Vindicating Its Statutory Rights and Common Law Claims Under the *Green Tree* and *Armendariz* Standards.

1. **The U.S. Supreme Court's *Green Tree* Standard**

An agreement requiring mandatory arbitration of state or federal statutory claims is enforceable only ***"so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum***." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (same); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (same); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987) (permitting arbitration of Exchange Act claims based on a finding that arbitration would be "adequate to vindicate Exchange Act rights"). *Green Tree* recognized that "large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 90. Under *Green Tree*, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

The Second Circuit has applied *Green Tree* in *In re American Express Merchants' Litigation*, 634 F.3d 187 (2d Cir. 2011) ("*Amex II*"). In that case, a putative class of merchants asserted antitrust claims against American Express, which then moved to compel arbitration under an agreement that prohibited class actions. Based on Dr. French's testimony, the Second Circuit held that "the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws." *Id.* at 197.

Other New York and Washington courts have similarly applied *Green Tree* to invalidate arbitration agreements that would impose excessive costs. *e.g.*, *Sutherland v. Ernst & Young LLP*, 768 F.Supp.2d 547, 551 (S.D.N.Y. 2011) (invalidating arbitration agreement where plaintiff's "maximum potential recovery would be too meager" to justify arbitration costs and expert fees required for individual prosecution); *Mendez v. Palm Harbor Homes, Inc.*, 111 Wash.App.446, 465 (2002) (holding arbitration

clause unenforceable where plaintiff would have been required to spend upfront well over $2,000 to try to vindicate his rights under a contract to buy a  $12,000 item to resolve a potential $1,500 dispute);

2. **Section 18.7 Excluded Plaintiff from AAA Expedited Procedure, Which Violates the *Green Tree* Rule by Making It "Prohibitively Expensive" for the Plaintiff to Arbitrate Its Statutory Rights and Common Law Claims.**

Section 18.7 of the BSA also forecloses the right of the Plaintiff to arbitrate pursuant to AAA expedited rules by limiting their applicability to $50,000 as opposed to the $100,000 limitation outlined in the rules (See AAA rule R-1(b) ("Unless the parties agree or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $100,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.  Parties may also agree to use these Procedures in larger cases.  Unless the parties agree otherwise, these Procedures will not apply in cases involving more than two parties.  The Expedited Procedures shall be applied as described in Procedures E-1 through E-10, in addition to any other portion of these Rules that is not in conflict with the Expedited Procedures.").

The significant differences between the AAA Expedited and Regular Procedure are the ***arbitration cost amount*** and the arbitration proceedings' ***time period***.  First, the Expedited Procedures require considerably less in AAA filing fees (only $1,000-2,000), no discovery (See AAA rule E-5), and the arbitrator's fees are limited to a fixed fee of only $725 per party for the whole arbitration ($1450 for both parties, Rule E-10), all of which lessen a Claimant's costs to only approximately $2,000 for the whole arbitration under AAA Expedited Procedure, and the case can be concluded within six months. However, the arbitration cost under AAA Regular Procedure would be $40,000 or more, and the arbitration proceedings may last over 12-18 months.

In this case, the claim amount, the current frozen fund balance, is below $100,000 since Amazon

keeps deducting its fees from the original frozen funds after account blocking.  However, the arbitration proceedings for the Plaintiff's arbitration demand filed in 2022 were not administered under AAA's expedited procedures because section 18.7 of Amazon's BSA requires the amount in controversy to be less than $50,000 for the AAA's expedited provisions to apply, which the plaintiff contends is unconscionable on its face since it increased the Plaintiff's arbitration cost over 20 times, from $2,000 to $45,000 for a case with a claim amount below $100,000.

Amazon may argue that the original frozen fund in the arbitration demand in 2022 is over $110,000; thus, the Expedited Procedure would not apply to this case even if there is no Section 18.7. This argument does not stand. **First**, the *current* frozen fund balance is *below* $100,000 since Amazon has been deducting its fees from the original frozen funds in the past two years after account blocking. **Second**, even if the original frozen funds in the arbitration demand are over $100,000, if Amazon had followed the AAA rules instead of attempting to bypass them in the contract, the Plaintiff could have waived any damages over $100,000 and elected to use the expedited process, where the arbitration cost would be approximately $2,000, and the arbitration could have been concluded within six months.

Amazon may also argue that the Plaintiff incurred high arbitration costs because it requested emergency relief.  This argument does not stand. Should Amazon not have included Section 18.7, the Expedited Procedure Restriction Term, in the Mandatory Arbitration Clause (Section 18, or Arbitration Agreement) and excluded the Plaintiff from the AAA Expedited Procedure, the Plaintiff would only need to spend approximately $2,000 in arbitration costs to conclude the case within six months. Then, the Plaintiff would not need to request an emergency relief to get some funds sooner to survive.

In summary, through Section 18.7, Amazon compelled the Plaintiff into the AAA *regular* procedure for its case with a claim amount of below $100,000. This resulted in the cost of plaintiffs' individually arbitrating, including the expense of an evidentiary hearing, i.e., $45,000 (Exhibit P-F29,

AAA's arbitration fee statement), plus a reasonable attorney fee of $60,000 for the **_regular_** procedure case which may last 12-18 months, totaling $105,000. In this case, the amount in controversy is below $100,000 (Exhibit P-F3, frozen funds records in Nov. 2021). These costs are extremely "**_prohibitively expensive_**" in violation of _Green Tree_ and would preclude Plaintiff from effectively vindicating its rights. _See In re American Express Merchants' Litigation_, 554 F.3d 300 (2nd Cir. 2009); _Ingle v. Circuit City Stores, Inc.,_ 328 F.3d 1165 (9th Cir. 2003).

### 3.   The _Armendariz_ Standard

In _Armendariz v. Foundation Health Psychcare Services, Inc._, the California Supreme Court manifested a similar concern for litigants' ability to effectively vindicate their claims. _Armendariz v. Foundation Health Psychcare Services, Inc._, 24 Cal.4th 83 (2000).  The _Armendariz_ court held that when an employer imposes mandatory arbitration of employee claims under California's Fair Employment and Housing Act (FEHA), "the arbitration agreement or arbitration process cannot generally require the employee to bear any _type_ of expense that the employee would not be required to bear if he or she were free to bring the action in court."  24 Cal.4th at 110-11 (italics in original).  _Armendariz_ is based on the recognition that "certain rights – unwaivable statutory rights or fundamental rights delineated in constitution or statutory provisions – are so important in our society that their enforcement should not be chilled by the threat of expenses unique to arbitration."  _D.C. v. Harvard-Westlake School_, 176 Cal.App.4th 836, 861 (2009).  Federal and state courts in California have applied the _Armendariz_ rule to a number of **_statutory and common law claims_**, including claims under California's Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL).  _See, e.g._, _Mercuro v. Superior Court_, 96 Cal.App.4th 167, 180 (2002) "[W]e see no reason why _Armendariz_'s 'particular scrutiny' of arbitration agreements should be confined to claims under FEHA. … [_Armendariz_] itself suggests its minimum requirements for arbitration of statutory claims apply to claims under the Consumer[s] Legal Remedies

Act."); *AT&T Mobility II, LLC v. Pestano*, 2008 WL 682523, at *6 (N.D. Cal. Mar. 7, 2008) (applying *Armendariz* to invalidate arbitration agreement affecting a UCL claim).

In this case, the principles articulated in *Armendariz* are present, as the $45,000 cost to employ the arbitrator is the type of expense the Plaintiff would never face in court.

*Armendariz* and *Green Tree* both recognize that arbitration costs can present significant barriers to vindicating statutory rights. However, there is a subtle difference between the standards they establish to determine when such costs invalidate an arbitration agreement. *Green Tree* requires the party seeking to avoid arbitration to show that it would be "prohibitively expensive" but does not specify what types of arbitral costs would meet that standard and leaves that issue for resolution on a case-by-case basis. See *Green Tree*, 531 U.S. at 522 ("How detailed the showing of prohibitive expense must be … is a matter we need not discuss … in this case."). *Armendariz*, on the other hand, is more precise. *Armendariz* established a categorical rule that prohibits any type of arbitral cost the plaintiff would not also bear in a court action.

Although the Second Circuit applied the generic *Green Tree* standard in *Amex II*, 634 F.3d at 197, federal courts in the Ninth Circuit have consistently applied the more precise *Armendariz* categorical cost rule. *See, e.g.*, *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (applying *Armendariz* to invalidate an arbitration agreement "because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court"); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1177 (9th Cir. 2003) (invalidating arbitration agreement that would require payment of a filing fee that "is not the '*type* of expense that the employee would be required to bear' in federal court") (italics in original); *Circuit City Stores v. Adams*, 279 F.3d 889, 893-94  (9th Cir. 2002) ("We find the

arbitration agreement at issue here virtually indistinguishable from the agreement … in *Armendariz*. … The DRA also requires the employee to split the arbitrator's fees with Circuit City.  This fee allocation scheme alone would render an arbitration agreement unenforceable.") (footnote omitted).

4. **Amazon's Section 18.7 Violates the Armendariz Rule by Requiring the Plaintiff to <u>Bear Arbitral Expenses It Would Not Bear in a Court Action.</u>**

Amazon may argue that Per Section 18.6, Amazon will ***reimburse*** those fees for claims totaling ***less than $10,000*** unless the arbitrator determines the claims are frivolous; also, per Section 18.8, Amazon will not seek attorney's fees and costs from the seller in arbitration unless the arbitrator determines the claims are frivolous.

**First**, among 55,000 seller accounts that Amazon blocked in 2021, the sellers with frozen fund amounts/claim amounts of less than $10,000 are minorities; section 18.6 does ***not*** apply to most of the seller cases, including the Plaintiff in this case since their claim amounts are above $10,000.  Section 18 still violates the *Armendariz* Rule by requiring the Plaintiff to bear arbitral expenses it would not bear in a court action.

**Second**, subject to the nonfrivolous condition determined by the arbitrator at the end, Amazon would only ***reimburse*** the arbitration cost for claims less than $10,000, ***not advance*** the arbitration cost. This means the small seller had to find a way to pay the arbitration cost out of its own pocket first.  It would be very challenging for the small sellers to do so since Amazon suddenly deactivated the sellers' account and seized its entire sales proceeds, leaving them, including the Plaintiff, barely any cash to pay any cost for arbitration.

**Third**, even though per Section 18.8, Amazon will not seek attorney's fees and costs from the seller in arbitration, this does not lessen the prohibitive financial impact upon the Plaintiff.  The sellers, including the Plaintiff in this case, would be required to advance AAA filing and administrative fees, as

well as half of the arbitrator's compensation (See AAA Commercial Rule R-50 ("All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties ….").

Also, the possibility that Plaintiff ultimately might recover these costs does not affect the analysis. *See Armendariz*, 24 Cal.4th at 110 ("[I]t is not only the costs imposed on the claimant but the *risk* that the claimant may have to bear substantial costs that deters the [effort] … to vindicate the[] statutory right … and therefore chills the exercise of that right.") (italics in original). The Plaintiff would ***not*** have to bear any of these fees in federal court.  Therefore, Amazon's Section 18.7 violates the *Armendariz* rule and cannot be enforced.

## B.  Section 18.7-the Expedited Procedure Restriction Term Is Unenforceable Because It Is Unconscionable.

### 1.  Section 18.7 is unenforceable as it is <u>unconscionable</u>.

The standards articulated in *Green Tree* and *Armendariz* preclude the enforcement of arbitration agreements that would prevent a litigant from effectively vindicating his or her claims in an arbitral forum. And those standards do not depend on any finding of unconscionability. Nevertheless, courts sometimes shoehorn the *Green Tre*e / *Armendariz* standards into an unconscionability analysis.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. Accordingly, "generally applicable contract defenses, such as fraud, duress, or ***unconscionability***, may be applied to invalidate arbitration agreements." *Ragone v. Atlantic Video at Manhattan Ctr.,* 595 F.3d 115, 121 (2d Cir.2010) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). *Valle v. ATM Nat., LLC*, No. 14-CV-7993 KBF, 2015 WL 413449, at *2 (S.D.N.Y.

Jan. 30, 2015).

Unconscionability is a question of law, not fact. *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 386 (Wash. 2020); *Zuver v. Airtouch Comm'n, Inc.*, 103 P.3d 753 (Wash. 2004). In his seminary article on unconscionability, Prof. Arthur Allen Leff distinguished two kinds of unconscionability of contract: procedural unconscionability and substantive unconscionability.[19] ***Washington common law followed this approach and declared <u>either</u> kind of unconscionability, if established for a contract term, <u>sufficient to void the contractual provision</u>***. *Gandee v. LDL Freedom Enter., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013) (citing *Adler v. Fred Lind Manor*, 103 P.3d 773, 782 (Wash. 2004)).

***The crux of procedural unconscionability is the deprivation of meaningful choice.***[20] "The principle is one of prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."[21] In considering "all the circumstances surrounding the transaction," three elements are pertinent. First, "the manner in which the contract was entered"; second, whether each party had "a reasonable opportunity to understand the terms of the contract"; and third, whether "the important terms were hidden in a maze of fine print."[22] It should be noted, however, that all these elements are not cumulative but rather a criteria of ***assessing the degree of deprivation of meaningful choice***.[23] Normal business habits and traditional business dealing covenants should also be taken into consideration.[24]

Section 18.7 is procedurally unconscionable because the process by which during the contracting

---

[19] Arthur Allen Leff, *Unconscionability and the Code—The Emperor's New Clause*, 115 U. PA. L. REV. 485, 487 (1965).

[20] *Schroeder*, 544 P.2d at 23.

[21] Wash. Rev. Code § 62A.2-302 (2022); *Milford Fin. Corp. v. Lucas*, 45 Mass. App. Dec. 53, 61 (Mass. Dist. Ct. 1970).

[22] *Id.*

[23] *Adler*, 103 P.3d at 781 (cautioning that the factors should not be "applied mechanically without regard to whether in truth a meaningful choice existed").

[24] *Schroeder*, 544 P.2d at 23

process in which to involve itself in a binding contract is based upon a "take it or leave it" nature and Also Amazon's absolute dominance power deprived the sellers, including the Plaintiff, of any meaningful choice with regard to Section 18.7 contained within the contract.  Considering Amazon's overwhelming dominance in the online retail market, small retailers do not have any viable or meaningful choice other than accepting Amazon's terms.

Section 18.7 is also substantively unconscionable. A provision of a contract is substantively unconscionable when it is " 'one-sided *or* overly harsh,' " " '[s]hocking to the conscience,' " " 'monstrously harsh,' " " ***OR*** " 'exceedingly calloused.' " *Adler v. Fred Lin Manor*, 153 Wash.2d 331, 344–45, 103 P.3d 773 (Wash. 2004) (internal quotation marks omitted) (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wash.2d 256, 260, 544 P.2d 20 (1975) and *Nelson v. McGoldrick*, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995) ("Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability.")) *Gandee*, 176 Wash.2d 598, 293 P.3d at 1197.  Sometimes does not mean all the time.  Also, under Washington law, the substantive law chosen under the BSA, substantive unconscionability alone, is sufficient to void an agreement or a term thereof. (Citing *Burnett v. Pagliacci Pizza, Inc.*, supra at 196 Wash. 2d 38, ¶ 27, 470 P.3d 486 (2020) (emphasis supplied)."

Amazon may argue that a finding that a provision is unconscionable only if monstrously harsh, exceedingly callous, or shocking to the conscience.  Amazon argues that all of these four factors are required, which misstates the law.  Only one factor, not all four, must be found to make a finding of substantive unconscionability.

In this case, Amazon is a multi-billion-dollar corporation. and has no problem paying over $45,000 arbitration cost for a claim amounting to below $100,000.  However, small retailers like the Plaintiff, which barely had cash after account blocking and fund seizing by Amazon, could not afford

the $45,000 arbitration cost and were left with no access to judicial remedies. Then Amazon would be able to keep the sellers' sales proceeds. It is a perfect killing and robbery game plan for Amazon. Section 18.7 allows Amazon to inflate the Plaintiff's arbitration cost over 20 times from $2,000 to $45,000, which is clearly one-sided, overly harsh, or shocking to the conscience.

In summary, Section 18.7 is unenforceable as it is unconscionable.

## C. Section 18.10 Is Unenforceable Because It Would Prevent the Plaintiff from Effectively Vindicating Its Statutory Rights And/Or It Is Unconscionable.

As stated before, the Plaintiff is one of over 55,000 seller accounts that Amazon blocked in 2021 and seized all the sales proceeds. To thwart thousands of sellers initiating cost-effective class action lawsuits, Amazon has embedded a mandatory arbitration clause through Section 18 of its BSA. This compels thousands of sellers to pursue *individual* arbitrations, each incurring around $40,000 in administrative and arbitrator fees (under the regular arbitration procedure). Many sellers, already financially strained by account deactivation and consequent loss of revenue and access to its funds, are forced to abandon their pursuit of justice due to the prohibitive cost of arbitration.

If Amazon did not compel these 55,000 third-party sellers, including the Plaintiff, into Section 18.10 of the BSA—the Class Action Waiver term, these third-party sellers could pursue justice through arbitration in a class or consolidated action per AAA Supplementary Rules for Class Arbitrations. Under the class action model, the Plaintiff does not need to pay any attorney fee or arbitrator fee; the class action counsel would only charge a contingency fee and even advance the filing fee for the Plaintiff in a class action. However, through Section 18.10, Amazon inflated third-party sellers, including the Plaintiff's legal cost, from nearly *zero* **dollars** to prohibitive individual arbitration cost, which is around $2,000 for AAA *expedited* procedure cases and over $40,000 for *regular* procedure cases. This Would

Prevent the Plaintiff from Effectively Vindicating Its Statutory Rights Under the Green Tree and Armendariz Standards. It would be unconscionable as well. Therefore, Section 18.10 is unenforceable.

**D.  Defendants' Motion to Compel Plaintiff Should Be Denied Because Amazon's Breaches and Unenforceable Terms Caused the Dismissal of Plaintiff's Arbitration.**

**1.  The Plaintiff's Arbitration Demand Was Dismissed by AAA Because Amazon Breached Section 18.9-the Written Submission Term, Resulting in the Plaintiff's Arbitration Costs Doubling.**

First, one provision in Section 18 of the BSA provides, "*You (the Seller) may choose to have the arbitration conducted by telephone, based on **written submissions**, or in person at a mutually agreed location"* ("Section 18.9" or "Written Submission Term"). Parties agree on the written submission terms in Section 18 of BSA because parties acknowledge and agree that 1)  third-party sellers on Amazon's online marketplace are from all over the world, it is not feasible, not convenient, and too expensive for sellers to fly to the US from overseas to conduct an in-person hearing or conduct video evidentiary hearing; and 2) by choosing written submission, sellers can save over thousands of AAA's second filings fee, arbitrator fee, and hearing room fee.  For instance, a case with a claim amount of $150,000 may incur an arbitration cost of approximately $20,000 under the ***written submission*** mode.  However, this cost can exceed $40,000 with ***evidentiary hearings***.  It means if the seller can choose written submission, it would pay almost half the arbitration cost compared to a case with an evidentiary hearing.

Per Section 18.9, Plaintiff has the right to elect arbitration by ***written submissions***." Right before the scheduling conference, the Plaintiff sent an email with the attachment of the BSA, informing Amazon and the Arbitrator that the Plaintiff is entitled to written submission and has ***chosen*** the written submission mode to save the arbitration cost.  However, during the scheduling conference, Amazon ***breached*** Section 18.9-the written submission term, and ***requested*** an in-person evidentiary hearing, and

24 of 30

then the arbitrator granted Amazon's request and ordered a two-day in-person hearing during the pandemic. This doubled the Plaintiff's arbitration cost from $20,000 to $45,000, plus an international travel cost of $15,000 or more. After being advised the Plaintiff's rep is based in China and cannot travel during the pandemic due to a travel ban, the Arbitrator allowed the Plaintiff to appeal in the evidentiary hearing via video. Even though this change removed the interest travel cost, the arbitration cost of $45,000 remains the same since there is still a two-day evidentiary hearing.  Together with a reasonable attorney fee of $60,000 for the arbitration under AAA's regular procedure, the total cost for the Plaintiff to arbitrate its claim is around $105,000.  This resulted in the incurred costs of the case being far *disproportionate* to and even *exceeding* the amount in controversy, approximately below $100,000 in this case.

Amazon would argue that the Arbitrator ordered an evidentiary hearing and had the authority to do so per AAA rules; Amazon is not liable for the cost doubling and payment default.  This argument does not stand at all.  In the arbitration, the arbitration agreement prevails over arbitration rules.  If Amazon complied with the written submission agreement- Section 18.9 and did not request an evidentiary hearing, the Arbitrator would *not* order a two-day in-person evidentiary hearing.

### 2.   Amazon's Section 18.7 Caused the Dismissal of Plaintiff's Arbitration.

Should Amazon have followed the AAA rules and not excluded the Plaintiff from AAA *expedited* procedure, Plaintiff would have concluded its arbitration within six months at the arbitration cost of only $2,000 or so. Unlike now, Plaintiff's arbitration was dismissed before conclusion and did not even receive a final arbitration award after it took over 20 months and spent over $12,000 since filing an arbitration demand with AAA in January 2022.

### 3.   Amazon's Section 18.10 Caused the Dismissal of Plaintiff's Arbitration.

Should Amazon have allowed third-party sellers, including the plaintiff, to conduct arbitration in a class or consolidated action, Plaintiff would have concluded its arbitration at nearly *zero* dollars of legal cost.

**4.   Amazon's Section 2 Caused the Dismissal of Plaintiff's Arbitration.**

Under Section 2 of the BSA, Amazon is permitted to withhold any payments representing customer payment to the Plaintiff sold merchandise that Amazon shall disburse to the Plaintiff.  Amazon will argue that Section 2 is a valid liquidated damages clause and is entitled to seize the Plaintiff's entire sales proceeds in the seller account.  Over nine arbitrators ruled that "any payment" in Section 2 cannot pass the "reasonable forecast" test as a valid liquidated damage clause.  It is an unenforceable penalty clause.

Killing and robbery are the first steps of Amazon's game plan. By improperly blocking the sellers' accounts per Section 3 and seizing their entire sales proceeds per Section 2, Amazon put the small sellers on death row, then robbed them of their entire sales proceeds, leaving almost no revenue and cash to these sellers, including the Plaintiff in this case.  Then, step 2 is divide and conquer. By compelling sellers, including Plaintiff, to waive *zero-cost* class action and move into expensive individual arbitration, Amazon successfully prevented most of the sellers from vindicating their claims with judicial remedies by Making It "Prohibitively Expensive" for Plaintiff to Arbitrate Its Claims.

Ironically, Amazon would choose to follow Sections 18.7 and 18.10 to exclude the Plaintiff from Expedited Procedure and class action in the arbitration to Making It "Prohibitively Expensive" for the Plaintiff to Arbitrate Its Statutory Rights and Common Law Claims cost, but it would *choose to breach* Section 18.9—written submission term to further double the higher *individual* arbitration cost for the regular procedure.  Amazon's intention is obvious.  It is not about honoring all terms equally in Section

18-Arbitration Agreement; it is about how to use its arbitrary monopoly power to block the Plaintiff's access to judicial remedies in any way possible.  Such hypocrisy shall not be blessed here.

Especially in this case, it would be too unconscionable to compel the Plaintiff back to arbitration since the Plaintiff did conduct arbitration, but Amazon's breaches and unenforceable terms caused the dismissal of Plaintiff's breach, resulting the Plaintiff to receive no final award from the arbitration after it took 20 months and spent over 12,000 to conduct arbitration per Amazon's Mandatory Arbitration Clause-Section 18.  Amazon's motion to compel the Plaintiff back to arbitration should be denied.

**E.  Alternatively, Even If this Court Decides to Compel Plaintiff Back to Arbitration, Plaintiff Should Be Entitled to Arbitration Its Claims in A Non-Prohibitively Expensive Way.**

Alternatively, in this memo, Plaintiff would not argue the merit of the case, which is whether Section 2 is unenforceable; Plaintiff would not argue the validity of other general terms of the Arbitration Agreement (Section 18, excluding Section 18.7 and 18.10); Plaintiff would not argue the arbitrability of the case merit and the delegation clause that Amazon may claim.

The Plaintiff's position is that Plaintiff already complied with the Arbitration Agreement in good faith and did file an arbitration demand with AAA in January 2022. However, in this case, with a claim amount below or around $100,000, Amazon breached Section 18.9-the Written Submission Term and included unenforceable Sections 18.7 and 18.10 in its Arbitration Agreement to inflate the Plaintiff's arbitration costs from *zero* dollars under class action arbitration, to $2,000 under AAA ***Expedited*** Procedure, to over $25,000 in the ***Written Submission*** arbitration mode under Regular Procedure, and eventually, to $45,000 in the ***evidentiary hearing*** arbitration mode under Regular Procedure, making it so extremely "prohibitively expensive" that it would prevent the Plaintiff vindicate its statutory rights and common law claims, and so unfair, overly harshly, one-sided, or even shocking to the conscience that is unconscionable.

Even If this Court Decides to Compel Plaintiff Back to Arbitration, Plaintiff Should Be Entitled to Arbitration Its Claims in A Non-Prohibitively Expensive Way, including:

1. Plaintiff Should Be Entitled to Arbitration Its Claims Below $100,000 Under AAA *Expedited* Procedure Per AAA Commercial Rules.

2. Plaintiff Should Be Entitled to Arbitration Its Claims In *Written Submission* arbitration mode Per Section 18.9 the Written Submission Term; Section 18.9 Should be Reaffirmed by this Court Because Otherwise It Would Prevent the Plaintiff from Effectively Vindicating Its Statutory Rights and/or It Would Unconscionable.

3. The Plaintiff Should Be Entitled to Arbitrate Its Claims In A *Class or Consolidated* action Per AAA rules and AAA Supplementary Rules for Class Arbitrations

**First**, Amazon's BSA clearly provides (last paragraph before Definition section ) that "If any provision of this Agreement is deemed unlawful, void, or for any reason unenforceable, then that provision will be deemed severable from these terms and conditions and will not affect the validity and enforceability of any remaining provisions."

**Second**, case laws demonstrate that when deciding on the motion to compel arbitration, courts have the *authority to void* some terms or provisions in the arbitration agreement. The Federal Arbitration Act (FAA) does not bar a court from applying the doctrine of unconscionability to an arbitration agreement and, based on a finding of unconscionability, refusing to enforce that arbitration agreement, or in appropriate circumstances, severing the unconscionable and unenforceable portion and enforcing the remainder of the arbitration agreement. 9 U.S.C.A. § 2; *Goodridge v. KDF Automotive Group, Inc.,* 2012 WL 3635279 (Cal. App. 4th Dist. 2012).

In the case of *Zuver v. Airtouch Comm'n, Inc*., the judge found some unconscionable provisions, including: fee–splitting provision in the arbitration agreement was substantively unconscionable;

confidentiality provision unduly favored employer, and thus was substantively unconscionable; unilateral provision precluding award of punitive damages to the employee was substantively unconscionable; severability clause in agreement mandated severance of unconscionable provisions. *Zuver v. Airtouch Comm'n, Inc.*, 103 P.3d 753, 759 (Wash. 2004).

In the case of *Perez v. Globe Airport Sec. Servs., Inc.*, the court held that provision of arbitration agreement stating that costs of arbitration would be shared equally between employee and employer was illegal and unenforceable in light of fact that agreement also required employee to submit her Title VII claims to arbitration; employee and employer was illegal and unenforceable in light of fact that agreement also required employee to submit her Title VII claims to arbitration; and entire agreement was rendered unenforceable by illegal provision. *Perez v. Globe Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1283 (11th Cir. 2001). In the case of *Chavarria v. Ralphs Grocery Co.*, the court held some provisions in the arbitration agreement were unconscionable. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 920 (9th Cir. 2013). In the case of *Hoober v. Moverment Mortgage, LLC*, the court also held that some provisions in the arbitration agreement are unconscionable. *Hoober v. Movement Mortg., LLC*, 382 F. Supp. 3d 1148, 1153 (W.D. Wash. 2019).

In summary, even If this Court Decides to Compel Plaintiff Back to Arbitration, this Court can rule Section 18.7 Expedited Procedure Restriction Term and Section 18.10 Class Action Waiver Term are unenforceable, and the Plaintiff Should Be Entitled to Arbitrate Its Claims in a ***Non***-Prohibitively Expensive Way, applying the AAA ***Expedited*** Procedure and ***Written Submission*** Arbitration Mode to this case.

## IV.   CONCLUSION

For the reasonings stated above, the Plaintiff hereby respectfully requests the court to

1.  Rule Section 18.7, the Expedited Procedure Restriction Term, is unenforceable,

2. Rule Section 18.10, the Class Action Waiver Term, is unenforceable,

3. Reaffirm Section 18.9, the Written Submission Term is enforceable and should be followed by parties,

4. Deny the Motion to Compel the Plaintiff back to arbitration, or

5. Alternatively, Even If this Court Decides to Compel Plaintiff Back to Arbitration, Rule that Plaintiff Should Be Entitled to Arbitration Its Claims in A Non-Prohibitively Expensive Way, including applying the 1) AAA Expedited Procedure and 2) Written Submission Arbitration Mode to this case;

6. Other remedies and reliefs the court deems proper.


Dated: New York, New York

October 25, 2023

By:  /s/ Julie Guo          By: /s/David Schwartz

JULIE GUO                DAVID SCHWARTZ
*Attorney for Plaintiff*      *Attorney for Plaintiff*