USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/30/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                         :

SHENZHEN XINGCHEN XUANYUAN
INDUSTRIAL CO. LTD.,                    :

                                      :            1:23-cv-6549-GHW

                   Plaintiff,      :

                                      :          MEMORANDUM

             -v-                     :       OPINION & ORDER

                                      :

AMAZON.COM SERVICES LLC, *and*
AMAZON.COM, INC.,                    :

                                      :

                 Defendants.    :

------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

       Plaintiff Shenzhen Xingchen Xuanyuan Industrial Co. Ltd. ("Xingchen") agreed to sell products using the online store hosted by Defendants Amazon.com Services LLC and Amazon.com, Inc. (collectively, "Amazon").  To do so, Xingchen entered into Amazon's standard Business Services Agreement (the "BSA").  The BSA contained an arbitration provision, requiring that the parties arbitrate all disputes arising under the BSA.  So when a dispute arose, Xingchen commenced arbitration against Amazon.  But the arbitration did not proceed to Xingchen's liking. Xingchen failed to pay the arbitrator's fees, which resulted in termination of the arbitration. Xingchen then filed a lawsuit against Amazon in New York State court reasserting the same claims that it had raised in arbitration.  That case was removed to this Court.  Because the parties agreed to arbitrate their disputes, Amazon's motion to compel Xingchen to return to arbitration is GRANTED.

I.      BACKGROUND[1]

A.      The Arbitration Agreement

Amazon operates the Amazon.com online store.  Dkt. No. 27 ("Pl. 56.1 Statement") ¶ 1.
Some of the products sold on Amazon's platform are sold directly by Amazon-related entities,
"while others are sold by Amazon's numerous third-party selling partners."  *Id.*  Xingchen, a Chinese
company based in Shenzhen, China, operated as a third-party seller on Amazon's online store.  *Id.*
¶¶ 2, 3.  Xingchen was forced to stop selling goods on Amazon's platform on June 24, 2021, when
Amazon terminated Xingchen's seller account.  *Id.* ¶ 3.  Amazon also blocked the disbursement of
revenues earned by Xingchen on the platform.  *Id.*

In order to operate as a third-party seller on Amazon's platform, Xingchen was required to
accept the terms and conditions contained in a Business Services Agreement with Amazon.  *Id.* ¶¶ 4,
5; Dkt. No. 1-1 at ECF 32–73 (BSA).  It did so.  *Id.*  The BSA defines the parties' agreements
regarding Xingchen's use of the Amazon platform.

The BSA contains an arbitration clause.  *Id.* ¶¶ 7, 8.  Section 18 of the BSA provides in
pertinent part the following:

> The Governing Laws[2] will govern this Agreement, without reference to rules
> governing choice of laws or the Convention on Contracts for the International Sale
> of Goods.  If the Elected Country is the United States, Canada, or Mexico, **Amazon
> and you both consent that any dispute with Amazon or its Affiliates or claim
> relating in any way to this Agreement or your use of the Services will be
> resolved by binding arbitration as described in this paragraph, rather than in
> court** . . . .  There is no judge or jury in arbitration, and court review of an arbitration
> award is limited.  However, an arbitrator can award on an individual basis the same
> damages and relief as a court (including injunctive and declaratory relief or statutory
> damages), and must follow the terms of this Agreement as a court would. . . .  The
> arbitration will be conducted by the American Arbitration Association (AAA) under
> its commercial rules.  Payment of all filing, administration and arbitrator fees will be
> governed by the AAA's rules.  We will reimburse those fees for claims totaling less
> than $10,000 unless the arbitrator determines the claims are frivolous.  The expedited
> procedures of the AAA's rules will apply only in cases seeking exclusively monetary

---

[1]  Unless otherwise noted, the facts in this section are undisputed.
[2]  The BSA defines the "Governing Laws" applicable to this case as "the laws of the State of Washington, United States
together with the Federal Arbitration Act and other applicable federal law . . . ."  BSA at 44.

relief under $50,000, and in such cases the hearing will be scheduled to take place within 90 days of the arbitrator's appointment.  Likewise, Amazon will not seek attorneys' fees and costs from you in arbitration unless the arbitrator determines the claims are frivolous.  You may choose to have the arbitration conducted by telephone, based on written submissions, or in person at a mutually agreed location. **Amazon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**

BSA § 18 (emphasis in original).

### B.     The Arbitration Proceeding

Xingchen initially pursued many of the claims asserted in this case by filing an arbitration demand with the American Arbitration Association (the "AAA").  Pl. 56.1 Statement ¶ 9.  On or around January 15, 2022, Xingchen's counsel filed a "Demand for Arbitration with Emergency Relief" (the "Demand") against a number of Amazon-related entities.  *Id.* ¶ 10.  That commenced the arbitration case captioned *Shenzhen Xingchen Xuanyuan Industrial Co., Ltd. v. Amazon.com Services, et al.*, AAA Case No. 01-22-0000-2381 (the "Arbitration").  *Id.*  In its Demand, Xingchen challenged Amazon's decision to deactivate Xingchen's access to Amazon's online platform—contending that the decision was "wholly unjustified."  *Id.* ¶ 11.  In its Demand, Xingchen asserted claims against Amazon under Washington law "for (1) breach of contract and/or the implied covenant of good faith and fair dealing, (2) 'a declaratory judgment that Section 2 of the BSA is an unenforceable penalty clause', (3) conversion, and (4) 'violation of bailment.'"  *Id.* ¶ 12.  The Demand sought an award ordering Amazon to release approximately $120,761.20 in sales proceeds associated with Xingchen's seller account.  *Id.* ¶ 13.

The parties engaged in litigation before an "Emergency Arbitrator" for a period of time.  *Id.* ¶¶ 16–26.  On May 19, 2022, the AAA sent the parties a letter informing them that a permanent arbitrator, John J. Maalouf, had been appointed to hear the matter as the sole arbitrator (the "Arbitrator").  *Id.* ¶ 29.  Together with the letter, the AAA transmitted to the parties' counsel the Arbitrator's fee schedule.  *Id.* ¶ 30.

The Arbitrator scheduled a preliminary hearing with the parties.  *Id.* ¶ 31.  Just before

9:00 a.m. on the date scheduled for the preliminary hearing, one of Plaintiff's lawyers, Julie Guo,

wrote to the Arbitrator explaining Xingchen's desire that the arbitration be conducted on written

submissions, rather than through a live hearing.  *Id.* ¶ 32.  In her email, Ms. Guo asserted that the

BSA's arbitration provision provided her client the right to choose whether to conduct the

arbitration "based on written submissions, no [*sic*] evidentiary hearings."  *Id.*  Ms. Guo did not attend

the preliminary hearing.  Instead, Xingchen was represented at the hearing by her co-counsel,

Kenneth G. Eade.  *Id.* ¶ 33.  Plaintiff asserts that Mr. Eade advocated at the hearing that the

arbitration be conducted on the basis of written submissions only.  *Id.* ¶ 34.  If so, the arguments

were not persuasive:  after the hearing, the Arbitrator issued an order indicating that, at Amazon's

request, an in-person hearing would be conducted over the course of two days in October 2022.  *Id.*

Ms. Guo, Xingchen's counsel, sent the Arbitrator an email in response expressing her concern

regarding the fact that the Arbitrator had scheduled an in-person hearing, rather than agreeing to

resolve the matter based on written submissions by the parties, as Xingchen preferred:

> I could not attend the preliminary hearing due to a conflict with a seller's
> deposition. . . .  I did send you an email early yesterday morning to explain that the
> seller chose written submission and Section 18 of the BSA, the arbitration
> agreement, which governs all the parties including seller claimant, Amazon and
> arbitrator.  This morning, I just received the scheduling order this morning, and I am
> a little shocked to see the in-person hearing requirement.

*Id.* ¶ 35.

The Arbitrator responded to Ms. Guo by letter the same day.  *Id.* ¶ 36.  In particular, the

Arbitrator's letter refuted Ms. Guo's contention that the arbitration must be conducted in writing,

rather than in person.  The Arbitrator's letter stated that Xingchen's counsel had consented to

conduct the arbitration proceeding in person, rather than by written submissions:  In his letter,

among other things, the Arbitrator wrote that that Xingchen's counsel, Mr. Eade, "informed this

Tribunal at the Preliminary Hearing that he represents [Xingchen] in this action.  In addition . . . he

agreed to participate in the in-person Hearing.  Specifically, Mr. [Eade] presented his views as to how long he expected an in-person hearing to take, and then he, Mr. Simpson, and this Tribunal, spent considerable time coordinating our respective calendars to find dates which would be convenient to the parties." *Id.*  The Arbitrator reaffirmed the date of the hearing and required that the parties pay a deposit "covering all costs, expenses and anticipated fees, for the entire proceeding." *Id.* ¶ 37.

Xingchen's counsel responded to the Arbitrator's letter, asking that the AAA review the Arbitrator's decision to hold an in-person hearing. *Id.* ¶ 38.  Xingchen's counsel reiterated her position that the Arbitrator had erred by requiring an in-person hearing, rather than adjudicating the issue based on written submissions.  *Id.*  She noted that the cost of conducting an in-person hearing would be substantially greater, and that the amount of the claim did not justify the expense.  *Id.* Xingchen asked the AAA to review the Arbitrator's decision.  Xingchen asserted that if the matter was not resolved in its favor, it would request that the AAA appoint another arbitrator.  *Id.* ("If the arbitrator and seller claimant cannot agree on the matter, the seller claimant will request AAA to resend another arbitrator list for the parties to select another arbitrator.  The seller claimant will reserve the rights to bring this matter to court.").

And on July 11, 2022, Xingchen's counsel, Mr. Eade, wrote a letter to the AAA to request that the AAA remove the Arbitrator.  *Id.* ¶ 42.  In his letter, Mr. Eade argued that Xingchen could not "obtain a fair and impartial hearing" in the Arbitration because "the arbitrator's refusal to follow the contract of the parties in allowing [Xingchen] the exercise of its contractual right to proceed with written submissions . . . is evidence of failure to properly conduct the proceedings." *Id.*  Amazon opposed the motion on July 18, 2022.  In its opposition, Amazon contended among other things that:

> [T]he AAA Rules expressly and unequivocally empower arbitrators to determine how merits hearings will be conducted, including whether the hearings will be papers-only submissions, live hearings, or virtual hearings.  See R-8, R-24, R-32(a), P-2.

> Therefore, Arbitrator Maalouf decision to conduct an in-person hearing (or a Zoom hearing if [Xingchen's] witnesses are unable to attend in person) was well within his discretionary authority as an arbitrator.

*Id.* ¶ 44.  On July 27, 2022, the AAA denied Xingchen's application to remove the Arbitrator.  *Id.* ¶ 46.

Xingchen's counsel responded to the AAA's decision by email the next day.  In her email, counsel wrote the following:  "We acknowledge the receipt of the AAA/ICDR decision on our arbitrator removal motion.  We will forward this to the seller claimant and confirm with them whether they will file this matter with NY court, and then give you an update re this case status."  *Id.* ¶ 47.

Xingchen did not try to pull out of the arbitration proceeding at that time.  Instead, Xingchen requested leave to file a dispositive motion in the arbitration.  On July 28, 2022, the Arbitrator permitted Xingchen to file its motion.  *Id.* ¶ 48.  The parties briefed the motion in August of 2022.  *Id.* ¶ 50.  The Arbitrator denied the motion on September 4, 2022.  *Id.* ¶ 51.  The parties continued to work to advance the arbitration proceeding.  On October 17, 2022, the Arbitrator entered an order granting a continuance, stating that the "Parties have jointly requested a continuance of the Hearing in this matter until December 8, 2022, in order to afford the Parties time to narrow and resolve outstanding discovery issues between themselves."  *Id.* ¶ 52.

The arbitration soon ground to a halt, because Xingchen refused to pay its part of the Arbitrator's fees.  On September 13, 2022, the AAA emailed an invoice to Xingchen's counsel for $44,500.  *Id.* ¶ 53.  In it, the AAA wrote that "only half of the deposit requested [*i.e.*, Amazon's half] is on hand.  The arbitrator has the authority to suspend the matter for non-payment or partial payment."  *Id.* (alteration in original).  The AAA sent the parties' counsel a reminder regarding the outstanding balance on October 7, 2022.  *Id.* ¶ 54.  Xingchen asserts that it could not afford the high cost of the arbitration proceeding which, in its view, had become excessive "because Amazon breached the written submission term in the arbitration agreement and requested a two-day in-

person hearing." *Id.* ¶ 56. While Xingchen argues that it was unable to pay the fee, it is undisputed that the company never properly invoked any procedure under the AAA's procedures that would assist a party suffering from financial hardship. The Company never sought deferral or a reduction of its administrative fees. *Id.* ¶ 56. Xingchen did not pay the fee.

After two more reminders from the AAA, *id.* ¶¶ 57, 58, on November 23, 2022, the Arbitrator issued a decision holding the Arbitration in abeyance because of Xingchen's failure to pay the arbitration costs. In his order, the Arbitrator wrote the following:

> The Tribunal, pursuant to its authority under the ICDR Rules, including Article 39 thereof,4 hereby Orders the proceedings in this matter, including the scheduled hearing, adjourned sine die, until such time as the Tribunal is informed by the ICDR that the parties have made all payments due.

*Id.* ¶ 59.

On January 18, 2023, the AAA sent another invoice to Xingchen. *Id.* ¶ 60. The company's counsel responded that the amount invoiced was unreasonable given the size of the claim, and that the company could not afford to pay it. *Id.* ¶ 61. However, again, she did not request any reduction or alternative mechanism to reduce the fee burden. Instead, she requested that the AAA terminate the case. In her response, she wrote the following: "Please send us a termination notice if the arbitrator and AAA plan to terminate this case. The Claimant intends to bring this notice and dispute to the court." *Id.* Her communication thus made clear that the Xingchen viewed termination as a result of non-payment to be a path to release it from its arbitration obligations and to permit it to pursue its claims in court.

Several months later, on May 5, 2023, the Arbitrator wrote to the parties, stating that he understood that the arbitration fee had still not been received from one of the parties. *Id.* ¶ 62. He advised the parties that "if the outstanding balance is not paid in full by May 31, 2023, the case will be closed." *Id.* And so it was. On June 1, 2023, the Arbitrator issued a final order terminating the case "due to non-payment of the required fees by the Claimant." *Id.* ¶ 64.

Xingchen did not immediately move to bring its claims to state court.  It first explored

continuing the arbitration.  But Xingchen conditioned its willingness to do so on Amazon's

agreement to the appointment of a different arbitrator.  *Id.* ¶ 65.  On June 14, 2023, Xingchen's

counsel wrote Amazon's counsel the following:  "Before the Claimant brings the Xingchen case to

the NY court this week, the Claimant would like to ask whether Amazon is willing to get another

arbitrator to have the arbitrator [*sic*] concluded."  *Id.*  Amazon's counsel responded to Xingchen's

counsel that day:

> This Claimant had an opportunity to arbitrate its claims.  Instead, however, it chose
> to attempt to disqualify the arbitrator and, when that failed, it simply refused to pay
> its share of the arbitrator's fees.  We will not condone or participate in arbitrator
> shopping.  If this Claimant files a court action, we will move to compel arbitration,
> and then ask the AAA to reappoint the same arbitrator upon whom the parties
> previously agreed.

*Id.* ¶ 66.

## C.    Procedural History

Xingchen followed up on its threat to pursue its claims in New York state court.  The

company filed this action in the Supreme Court of the State of New York, New York County on

June 16, 2023.  Dkt. No. 1-1 at ECF p.9.  The claims pursued by Xingchen in this action arise from

the same transaction that was at the center of its claims in the Arbitration—Amazon's decision to

block Xingchen's seller account and its decision to withhold some of the proceeds of sales made by

Xingchen on the platform.  *Id.* at ECF pp.9–25.  In this action, Xingchen asserts claims against

Amazon for (1) a declaratory judgment that Section 2 of the BSA is "unenforceable," (2) breach of

the BSA, (3) conversion, (4) unjust enrichment, and (5) violation of the Washington Consumer

Protection Act, 19.86 RCW.  *Id.*  Significantly, the complaint does not assert that Section 18 of the

BSA—the agreement's arbitration provision—is unenforceable.

Amazon removed this case to this Court on July 27, 2023.  Dkt. No. 1.  Following a pre-

motion conference with the Court, Amazon filed its motion to stay this case and to compel

arbitration on October 4, 2023.  Dkt. No. 16 (notice of motion); Dkt. No. 17 ("Mem. in Support").

In its motion, Amazon asserts that Xingchen is clearly bound by the terms of the BSA to pursue its

claims in arbitration.  Amazon highlights the fact that Xingchen commenced the Arbitration and

only withdrew from it after its dispositive motion was denied by the Arbitrator.  Amazon argues that

Xingchen should not be permitted to forum shop by abandoning the Arbitration that Xingchen had

started after the Arbitrator made unfavorable decisions against the company.

Xingchen filed its opposition on October 25, 2023.  Dkt. No. 23 ("Opposition").  In its

Opposition, Xingchen argues that several provisions of the BSA are unenforceable because they are,

in the company's view, unconscionable.  The Opposition identifies "Section 18.7" and "Section

18.10" of the BSA as the agreement's problematic provisions.[3]  Opposition at 10, 13, 15, 19, 20.

The Opposition also challenges Section 2 of the BSA as unenforceable.  The Opposition does not

contend that the provision of the BSA delegating disputes to the arbitrator is unenforceable.  The

motion was fully briefed on November 8, 2023 when Amazon filed its reply.  Dkt. No. 28.

On its own initiative, the Court requested supplemental briefing from the parties during a

conference held on December 20, 2023.  Dkt. No. 32.  Amazon filed its supplemental memorandum

of law and supporting materials on January 8, 2024.  Dkt. Nos. 33, 34.  Xingchen filed its opposition

with supporting materials on January 22, 2024.  Dkt. Nos. 35, 36.  Amazon's reply was filed on

January 29, 2024.  Dkt. No. 39.

## II.   LEGAL STANDARD

Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract . . . ."  9 U.S.C. § 2.  "There are two types of validity challenges under § 2:  'One type

challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the

---

[3] The persuasiveness of Xingchen's opposition is undermined by the fact that Section 18 of the BSA does not contain the subsections cited.  BSA § 18.

contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). "[O]nly the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. [A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* (second alteration in original) (internal quotation marks and citation omitted).

The FAA also provides that parties can petition the district court for an order compelling arbitration under 9 U.S.C. § 4. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had not commenced litigation nor failed to comply with an order to arbitrate).

In order to determine whether an action should be sent to arbitration, courts in this Circuit engage in the following inquiry:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims

in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). "In deciding a motion to compel arbitration, 'the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (quoting *LAIF X SPRL*, 390 F.3d at 198).

"It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate." *Id.* at 567 (citations omitted). "The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "This principle flows inexorably from the fact that arbitration is simply a matter of contract between the parties." *Id.* (quotation and brackets omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (holding that "arbitration is a matter of contract" (quotation omitted)); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (holding that, with respect to an arbitration agreement, "as with any other contract, the parties' intentions control" (quotation omitted)). Hence, "[t]he threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citation omitted).

However, "[t]he Supreme Court has interpreted the FAA broadly, finding a 'liberal federal policy favoring arbitration agreements.'" *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533 (E.D.N.Y. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (brackets omitted). Furthermore, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342–43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (quotation omitted)). If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (quotation omitted).

## III.   DISCUSSION

### A.    The Parties Agreed to Arbitrate

It is uncontested that the parties entered into the BSA. The parties agreed to arbitrate their dispute in the BSA. In its Opposition, Xingchen attacks the validity of several portions of the agreement, but Xingchen does not contend that the parties' agreement to arbitrate is unenforceable. Nor does it challenge the enforceability of the provision of the arbitration agreement that establishes that the arbitration "will be conducted by the [AAA] under its commercial rules." BSA § 18.

By adopting the AAA's commercial rules in the BSA, the parties clearly indicated that issues of arbitrability were to be resolved by an arbitrator. "In determining whether the arbitrability of a dispute is to be resolved by the court or the arbitrator, the arbitration agreement is determinative." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021). "Where the parties explicitly incorporate procedural rules that empower an arbitrator to decide issues of arbitrability,

that incorporation may serve as clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator." *Id.* (internal quotation marks and citation omitted). "Because the AAA Commercial Arbitration Rules . . . explicitly empower an arbitrator to resolve questions of arbitrability, [the Second Circuit has] found incorporation of these rules into an arbitration agreement to be relevant in evaluating whether there is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *Id.* Here too, the parties' adoption of the AAA commercial rules is clear evidence of the parties' intent to delegate issues of arbitrability to the arbitrator.

Because the delegation provision of the arbitration agreement is unchallenged, Xingchen's contention that other provisions of the BSA are unenforceable are issues for the Arbitrator to decide, not the Court. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 72 ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *see also Reale v. Match Grp., LLC*, No. 3:21-CV-01571 (VAB), 2022 WL 4115660, at *7 (D. Conn. Sept. 9, 2022) ("This Circuit has recognized that when 'the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator,' the question is delegated to the arbitrator and not the courts."); *Sidell v. Structured Settlement Invs., LP*, No. 3:08-cv-00710 (VLB), 2009 WL 103518 (D. Conn. Jan. 14, 2009) (deciding that the court "need not address any of [the plaintiff's] arguments against arbitration if it finds that the parties have agreed to arbitrate arbitrability" (citing *Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir. 2002)). The Court treats the parties' agreement to arbitrate as valid and enforceable, and leaves any other issues regarding the enforceability or interpretation of the other provisions of the agreement to the arbitrator to decide.

**B.    The Claims in This Action Fall Within the Scope of the Arbitration Agreement**

The claims at issue in this case fall within the scope of the parties' arbitration agreement. "Ordinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute." *Loc. Union 97, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023). The arbitration agreement requires that the parties arbitrate "any dispute any dispute with Amazon or its Affiliates or claim relating in any way to [the BSA] or [Xingchen's] use of the Services . . . ." BSA § 18. The claims in this case clearly relate to the BSA and Xingchen's use of Amazon's platform. Xingchen cannot reasonably argue that the claims in this case do not fall within the scope of the arbitration agreement:  after all, it initiated the Arbitration asserting substantially the same claims that it pursues in this action. As noted above, Xingchen's counsel made a number of statements during the course of the Arbitration acknowledging that the arbitration provision of the BSA applied to the parties' dispute.

**C.    A Stay of This Action Pending Arbitration Is Warranted**

This action must be stayed pending arbitration. "[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). The plaintiff pursues only state-law claims in this case; all of them are subject to the parties' arbitration agreement. Because Amazon has requested that the Court stay this case pending the parties' arbitration, the Court must do so.

Section 3 of the FAA provides that a stay of proceedings is to be maintained "until such arbitration *has been had* in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3 (emphasis added). Following full briefing on Amazon's motion, the Court requested supplemental briefing from the parties regarding whether, given the termination of the arbitration proceedings by the

AAA, the arbitration "had been had" within the meaning of Section 3 of the FAA. The Court made that request during a conference held on December 20, 2023. *See* Dkt. No. 32. In doing so, the Court referred the parties' the Second Circuit's summary opinion in *Billie v. Coverall N. Am. Inc.*, No. 22-718-CV, 2023 WL 2531396 (2d Cir. Mar. 15, 2023).

In *Billie*, the Second Circuit canvassed the opinions of four of its "sister circuits" that "have held that an arbitration 'has been had' within the meaning of Section 3—thus allowing the court to lift the stay—when arbitral proceedings were initiated in accordance with the terms of the parties' agreement but were then terminated without a final award because of a party's failure to pay the fees associated with the arbitration." *Id.* at *2. *Billie* can be read to include an implicit critique of those decisions.[4] But because the parties agreed that the standard articulated by the Ninth Circuit Court of Appeals in *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016), applied, the Second Circuit assumed "*arguendo* that *Tillman's* reasoning is consistent with the FAA." *Billie*, 2023 WL 2531396, at *2. Applying *Tillman,* the Second Circuit concluded in *Billie* that arbitration had not "been had" because "the proceedings ended not because the arbitrator invoked the AAA's procedures for closing a case when the parties have failed to pay, but rather because [a party] voluntarily withdrew." *Id.* *Billie* did not address how a panel of Second Circuit would evaluate whether arbitration "had been had" in a situation such as this one, where the underlying arbitration had been terminated by the AAA.

---

[4] In relevant part, the Second Circuit noted:

> Section 3's stay requirement "enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." Thus, although the FAA does recognize certain "specifi[c] circumstances in which judicial participation in the arbitral process is permitted," such as "to resolve disputes regarding the appointment of an arbitrator or to fill an arbitrator vacancy," the stay typically functions to prevent further litigation in court until a final arbitral award has been rendered, at which point, the FAA allows the stay to be lifted so as to enable "subsequent proceeding[s] to confirm, modify, or set aside the [resulting] arbitration award."
>
> *Nevertheless*, a few of our sister circuits have held that an arbitration "has been had" within the meaning of Section 3—thus allowing the court to lift the stay—when arbitral proceedings were initiated in accordance with the terms of the parties' agreement but were then terminated without a final award because of a party's failure to pay the fees associated with the arbitration.

*Billie*, 2023 WL 2531396, at *2 (alterations in original) (emphasis added) (citations omitted).

On the same day that the Court requested supplemental briefing on the issue in this case, another Second Circuit panel answered the question in another summary order. In *Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728, at *1 (2d Cir. Dec. 20, 2023) (summary order), the Second Circuit reversed and remanded a decision by Judge Katherine Polk Failla. In *Brown*, as here, the underlying arbitration proceeding had been terminated by the AAA. *See Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, Dkt. No. 54, A-126–29. As a result, relying on the decisions by the various "sister circuits" listed in *Billie*, Judge Failla found that the arbitration "had been had" and chose not to stay the case.

The panel in *Brown* explained the "has been had" requirement in Section 3 of the FAA as follows:

> Section 3 of the FAA provides, in relevant part, that courts must stay litigation "until . . . arbitration has been had in accordance with the terms of the agreement." This stay requirement prevents litigation in federal court *until a final arbitral award has been rendered*; after that, the stay can be lifted to allow for "a subsequent proceeding to confirm, modify, or set aside the arbitration award."

*Brown*, 2023 WL 8800728, at *2 (emphasis added) (quoting 9 U.S.C. § 3 and *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 202 (2000)). Applying that standard, the panel concluded that arbitration had not "been had" notwithstanding the termination of the arbitration proceeding by the AAA.[5]

While acknowledging that *Brown*, like *Billie*, is a summary order, the Court follows the ruling of that panel in this decision: arbitration has not yet "been had" in this case, making a stay appropriate.

Compelling arbitration on the facts presented in this case is the correct outcome. The record presented to the Court indicates that counsel for Xingchen believed that the failure of the

---

[5] The panel also found support in other facts that it understood to be presented in *Brown*. *See, e.g., Brown*, 2023 WL 8800728, at *2 ("Further, while the AAA notified the parties that it would terminate proceedings if Peregrine failed to pay the amount required by its rules, it does not appear to have followed the multi-step process required by its rules.").

arbitration would free the company from its clear contractual obligation to continue the arbitration that it had commenced, so that it could pursue the claims in court instead.  The record indicates that Xingchen did not attempt to remediate its purported inability to pay through the arbitration process itself, apparently preferring termination in order to skip out on the arbitration process following adverse rulings by the arbitrator.

There is a fundamental problem with Xingchen's approach in this case:  if a party can escape a mandatory arbitration provision and move a case to court simply by not paying its arbitrator without, at a minimum, first working to remediate any inability to pay in the arbitration proceeding itself, such arbitration provisions will lose their force.  A mandatory arbitration provision would become an optional arbitration provision.  Application of the approach adopted by the Second Circuit panel in *Brown* is particularly appropriate on the facts of this case.[6]

## IV.    CONCLUSION

Amazon's petition to compel arbitration is GRANTED.  Amazon's request for a stay of this matter is also GRANTED.  To the extent that Xingchen asserts that it is unable to pay the costs of the arbitration, the Court expects that it will work to resolve that issue before the arbitrator in the first instance.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 16 and to note the stay of this matter on the docket.

SO ORDERED.

Dated:  May 30, 2024

_____
GREGORY H. WOODS
United States District Judge

---

[6] This result is also appropriate because Xingchen waived any argument that the arbitration had not been had by failing to raise the issue in its briefing.  *See, e.g.*, *Rodriguez v. Carson*, 401 F. Supp. 3d 465, 470 (S.D.N.Y. 2019) (finding failure to raise issue in opposition brief constituted waiver); *Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021) ("Plaintiff chose consciously, by his silence [in opposition], to waive and abandon any argument he could have made . . . .").  Xingchen failed to raise the issue in its briefing notwithstanding the fact that Amazon's pre-motion letter in this case noted the existence of *Billie*.  *See* Dkt. No. 34 at ¶¶ 2–3.